Teander G. Peterson, Appellee, v. O. C. Peterson et al., Appellants.

Gen. No. 20,829.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. WIL-LIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed May 11, 1915.

## Statement of the Case.

Bill by Teander G. Peterson, complainant, against O. C. Peterson and others.

This appeal is from a decree of the Superior Court of Cook county, entered July 16, 1913, in favor of complainant. The appeal was originally taken to the Supreme Court upon the theory that a freehold was involved in the litigation, and at the February term, 1914, the Supreme Court rendered a judgment in the cause affirming the decree. But, upon petition, a re-hearing was allowed, and at the June term, 1914, the Supreme Court transferred the cause to the Appellate Court, holding that it had no jurisdiction of the appeal inasmuch as a freehold was not involved (*Peterson v. Peterson*, 264 Ill. 121, 122).

Complainant's original bill was filed on April 5, 1911. He therein prayed for an accounting, for the specific performance of a verbal contract providing for the conveyance to him of the premises in question, and for an injunction to restrain the further prosecution of a forcible detainer action commenced against him on April 3, 1911. A preliminary injunction was issued. All of defendants, O. C. Peterson, William A. Peterson, Charles J. Ohman and Anna S. Ohman, his wife, filed a joint and several answer, denying the material allegations of the bill, and the cause was referred to a master in chancery to take proofs and

report his conclusions of law and findings of fact there-
on. On June 11, 1912, by leave of court and without
prejudice to the reference, complainant filed an
amended bill.

In this amended bill complainant alleged, in sub-
stance, that prior to November 26, 1906, the defendant
Charles J. Ohman was the owner of certain property
on St. Lawrence avenue in Chicago; that said property
was subject to a trust deed (hereinafter referred to as
the Strauss mortgage) executed by said Ohman and
his wife to secure an indebtedness of $9,800, incurred
for the purpose of erecting three two-flat buildings on
said property; that complainant had entered into a
contract with said Ohman to furnish and had furnished
certain labor and materials in the erection of said
buildings; that on November 26, 1906, complainant
filed a bill in the Circuit Court of Cook county against
said Ohman and others to enforce a mechanic's lien
on said property and buildings for said labor and
materials so furnished; that in said mechanic's lien
cause the defendant, O. C. Peterson, acted as the solic-
itor for said Ohman and wife; that about June 29,
1909, a decree was entered in said cause establishing
complainant's right to a mechanic's lien and ordering
a sale of the premises to satisfy the lien; that about
July 23, 1909, said premises were sold by a master in
chancery to V. G. Gallagher, solicitor for complainant
in said cause, for the sum of $4,850.70; that subse-
quently said Gallagher assigned and delivered the
master's certificate of sale to complainant, who there-
after borrowed $1,000 from the Chicago City Bank,
giving his note therefor and pledging said certificate
as collateral security; that at the time complainant
filed his said bill for a mechanic's lien he was residing,
and has since continuously resided, in one of said flats,
and that after said premises were sold as aforesaid
complainant collected certain rents from other per-
sons, except said Ohman, living in said buildings; that

after the issuance of said master's certificate of sale said Ohman, the owner of the equity of redemption, assigned and transferred to the defendant, O. C. Peterson, all his interest in the income from said buildings; and thereafter, upon an accounting being had between complainant and said O. C. Peterson, it was found that complainant was indebted to said O. C. Peterson, on account of rents, in the sum of $550, which sum complainant was then unable to pay, and that some time in the early part of the year 1910, by agreement, said O. C. Peterson recovered a judgment against complainant for said sum, which judgment remains unsatisfied; that prior to August 1, 1910, said Ohman had paid upon the principal of said Strauss mortgage the sum of $1,500; that the notes evidencing said indebtedness had been signed by complainant as well as by said Ohman; that in the month of August, 1910, the premises were subject to a sale for taxes, and the holder of the tax sale certificate would have become entitled to a deed thereunder in the month of November, 1910; that the notes secured by said Strauss mortgage became due and payable in September, 1910; that in August, 1910, complainant had no property out of which the said O. C. Peterson judgment for $550 against him could be satisfied, and had no property except said master's certificate of sale, pledged as aforesaid to the Chicago City Bank, all of which was well known to said O. C. Peterson; that during said month of August, 1910, said O. C. Peterson approached complainant for the purpose of obtaining security for the payment of his said judgment, and such negotiations were had that it was agreed between complainant and said O. C. Peterson that complainant would assign said master's certificate of sale to said O. C. Peterson, and that the latter would take up complainant's note of $1,000 to said Chicago City Bank for which it held said certificate as collateral, would redeem said premises from said tax sale, would pay the

interest due on said Strauss mortgage, would arrange for an extension of said mortgage, would secure the issuing of a master's deed upon said certificate if the premises were not redeemed, and would hold said certificate and deed as security for the payment by complainant to him, said O. C. Peterson, of the amounts so to be advanced and of the amount of said judgment with interest thereon, and that upon payment by complainant to said O. C. Peterson of said amounts so advanced, together with the amount of said judgment and interest complainant might redeem said premises; that in pursuance of said agreement complainant assigned his interest in said certificate of sale to said O. C. Peterson, and the latter paid to said Chicago City Bank the amount of complainant's indebtedness to it and received from the bank complainant's said note and he still holds the same as an obligation against complainant; that O. C. Peterson also paid $800 upon the balance due upon the notes secured by said Strauss mortgage and procured a new loan upon the premises in the sum of $7,500, but that the principal note evidencing the former loan, signed by complainant as well as by said Ohman as aforesaid, was not cancelled and the same remains outstanding as a liability against complainant; that said O. C. Peterson also paid the amount necessary to redeem said premises from said tax sale, and also paid some interest which had accrued upon the balance of $8,300 due upon said Strauss mortgage, and has since also paid certain accrued interest on said indebtedness of $7,500; that the reasonable rental value of the six flats in said buildings is $150 per month; that said flats have all been rented and the rents thereof, save one flat, have been collected either by said O. C. Peterson, or by said Ohman or his wife pretending to act under authority from said O. C. Peterson; that complainant has lived in one flat but has paid no rent therefor since the making of said

agreement with said O. C. Peterson; that the deed to said premises, issued upon the master's certificate of sale, was issued on or about October 24, 1910, and that said O. C. Peterson procured the same to be issued in the name of the defendant, William A. Peterson, a brother of said O. C. Peterson, but that said William A. Peterson has no interest in said premises and holds title to the same as a naked trustee.

Complainant further charged in his amended bill, in substance that said O. C. Peterson, in approaching complainant in August, 1910, and in entering into negotiations with him as aforesaid, acted as the representative of and in conspiracy with said Ohman and wife for the purpose of cheating and defrauding complainant out of said premises, and so that said Ohman might enjoy the beneficial use of the premises, after the expiration of the period of redemption from said master's sale, without paying complainant the amount found due him by the decree in said mechanic's lien cause; that the said Ohmans have collected all of the rents of said premises, except for the flat occupied by complainant, and have retained said rents for their own use with the knowledge and consent of said O. C. Peterson, and as part of said conspiracy; that complainant has frequently requested said O. C. Peterson to come to an account with him as to what amount may be due from complainant for the sums so advanced by said O. C. Peterson and for the amount of his said judgment and interest (complainant to be allowed credit for the rents collected less any proper expenditures), and that said O. C. Peterson convey said premises to complainant upon the payment of said amounts, but that O. C. Peterson has refused and still refuses to account and denies complainant's right to redeem said premises in accordance with said agreement; that in pursuance of said scheme to cheat and defraud complainant, said O. C. Peterson has instituted proceedings in the Municipal Court of Chicago to evict complain-

ant from said flat now occupied by him, and that unless restrained said O. C. Peterson will proceed to enforce his legal rights against complainant in derogation of complainant's equitable rights under said agreement. The bill prayed that an account be taken to ascertain what amount remained due and owing to said O. C. Peterson from complainant, that upon payment by complainant of such amount said William A. Peterson be decreed to execute a conveyance of said premises to complainant and that possession of said premises be delivered to complainant, and that the defendant be restrained from bringing or prosecuting any suit or suits at law in respect to the possession of said premises, etc.

To this amended bill the defendants filed a joint and several answer, denying the material allegations of the bill and denying that complainant was entitled to the relief sought, and by an amendment to the answer they set up the statute of frauds as a defense.

O. C. Peterson did not deny the agreement or that complainant was entitled to redeem, but he claimed that a time limit was fixed for this redemption by complainant at October 24, 1910, which was the time when a master's deed under said certificate would be due. He testified that he agreed to take up the certificate and pay the taxes and the interest, and that he would turn the property back to complainant upon the latter reimbursing him for the amounts advanced with interest, plus the amount due on his judgment and payment for his trouble in the matter and payment of $25 per month while complainant occupied a flat in the building, provided complainant "would redeem" or pay all those amounts "before October 24, 1910." Gallagher, complainant's attorney, testified that after his return to Chicago and after said agreement had been made he had an interview with O. C. Peterson, at which time he reproached O. C. Peterson for dealing with his client direct and during his absence, and

that O. C. Peterson replied: "Well, I don't want the property, Gallagher; don't get excited and talk that way about it. My only object in taking over the certificate was to make sure that I collect that judgment; * * * that is all I want; * * * if he can sell the property, all right; if I can sell and get the amount of that judgment, and what I have invested, with interest on it, that is all I want." Gallagher further testified to the effect that he several times endeavored to have the verbal agreement between complainant and O. C. Peterson put in writing, but that the latter refused so to do and further refused to render an itemized statement of what he claimed was owing him by reason of the transaction. Complainant denied that it was verbally agreed that a time limit within which he might redeem was fixed at October 24, 1910.

The master made his report in which he found the facts substantially as alleged in complainant's amended bill. The master further found, in substance, that subsequent to the sale of the premises under the decree in said mechanic's lien proceedings and after said Ohman had assigned the rents to O. C. Peterson, Ohman continued to collect the rents as he had previously done, but that it did not satisfactorily appear that any accounting was ever had as to said rents between said Ohman and O. C. Peterson; that complainant and said Ohman have resided in flats in said building since the same were erected; that the master's deed on said certificate of sale was due on October 24, 1910; that said Ohman's right to redemption expired on July 24, 1910, and that his said assignment of the rents to O. C. Peterson was made while he still had the right of redemption; that complainant did not pay any rent for the flat occupied by him to said Ohman for some considerable period prior to said assignment of the rentals from Ohman to O. C. Peterson, except such rentals as were included in said O. C. Peterson's judg-

ment of $550 against complainant; that some time
prior to August 10, 1910, O. C. Peterson, acting in
behalf of said Ohman, entered into negotiations with
complainant, through said V. G. Gallagher, complain-
ant's attorney, for the purchase of said master's cer-
tificate of sale, and offered to pay therefor the sum of
$2,800, which offer was refused; that during said
month of August, 1910, while complainant's attorney,
Gallagher, was absent from the city, O. C. Peterson
visited complainant and entered into negotiations with
him which resulted in the making of the verbal agree-
ment mentioned in complainant's bill and the assign-
ment of said master's certificate to O. C. Peterson in
accordance with said agreement; that it is difficult to
determine from the evidence just what time was fixed
by the parties to said verbal agreement within which
complainant might redeem; that said O. C. Peterson
testified that the date for redemption was fixed at
October 24, 1910; that even though the time of redemp-
tion was fixed at said date, complainant could not then
have redeemed from O. C. Peterson because the latter
had not then performed his part of the agreement, in
that on said date said Strauss mortgage and other
items which O. C. Peterson had agreed to pay had not
been paid; that O. C. Peterson, on August 8, 1910,
paid $1,000 to said Chicago City Bank, and received
from said bank complainant's note of $1,000, and also
received said master's certificate so deposited as col-
lateral security to said note, but that said note was not
surrendered to complainant and is now a valid indebt-
edness from complainant to O. C. Peterson; that O. C.
Peterson also paid the sum of $761.20 to redeem the
premises from said tax sale; that after the master's
deed was issued to said William A. Peterson October
24, 1910, to wit, on November 22, 1910, O. C. Peterson
paid $800 of the principal on said Strauss mortgage,
and $40 interest, and after making said payments pro-
cured a new loan of $7,500 on said premises from

Prescott & Burch, and from the proceeds thereof paid the balance due upon said Strauss mortgage, and the same was released; that subsequent to the master's sale under the decree in said mechanic's lien proceedings complainant's attorney, V. G. Gallagher, purchased certain matured interest notes, or coupons, on the Strauss mortgage, and, in order to assist O. C. Peterson in arranging for said new loan from Prescott & Burch, Gallagher, acting for complainant, turned over to said O. C. Peterson said interest notes or coupons; that the fair, cash market value of said premises in the month of August, 1910, was upwards of $16,000; that the complainant is a mason contractor and that he is unfamiliar with negotiations involving questions of law or legal details, while the defendant, O. C. Peterson, is a member of the Chicago bar and familiar with law and legal details; and that in the negotiations between O. C. Peterson and complainant the former was acting in behalf of said Ohman and that the latter was not advised of that fact and did not know that he was jeopardizing his rights and interest in said premises.

The master also found in his report the amount due complainant from O. C. Peterson for the rental value of five flats from November 1, 1910, to the date of his report, and also found the amount due O. C. Peterson from complainant to the date of said report. The master further found that the equities of the cause were with complainant; that the agreement between O. C. Peterson and complainant, the said assignment to O. C. Peterson of said master's certificate of sale and the issuance of the deed thereon amounted to an equitable mortgage; that William A. Peterson held the legal title to said premises as a naked trustee; that complainant was entitled to redeem the premises from the defendants upon payment of the amount which might be found due at the date of the entry of a decree in this cause, said payment to be made within a rea-

sonable time; and the master recommended that a decree be entered in accordance with the prayer of complainant's amended bill and the master's findings and conclusions.

The defendants filed objections to said report, which were overruled, and the same were allowed to stand as exceptions on the hearing before the court. The court, upon the hearing, overruled the exceptions and entered a decree in accordance with the master's findings. The decree re-referred the cause to the master to take a further and final account of what was due O. C. Peterson under said agreement between O. C. Peterson and complainant, including any amounts not specified therein which might have been reasonably expended by O. C. Peterson or William A. Peterson in and about the necessary care of the premises, and for the payment of taxes, assessments, etc., and for any payments upon the principal or interest of the mortgage for $7,500 made to Prescott & Burch; and also to take an account of the rents and profits which had come into the hands of any of the defendants, which said rents and profits should be deducted from the total amount found due from complainant. The decree further ordered that within sixty days after the coming in and confirmation of said master's report the complainant should pay the sum found due from him upon said accounting, less his costs; that upon such payment being made by him, evidenced by the receipt of the clerk of the court, said William A. Peterson should execute a good and sufficient deed of conveyance of the premises to complainant, etc., and the defendants should deliver up to complainant all deeds, writings, etc., in their custody or control which in any way related to said premises; that in case of default of said William A. Peterson, upon presentation to him of said receipt of the clerk, to execute said deed after three days, said deed should be executed by the master; and that in default of complainant pay-

ing said sum so found due from him within said sixty days, complainant's bill should stand dismissed.

RANKIN, HOWARD & DONNELLY, for appellants.

URBAN P. GALLAGHER, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

## Abstract of the Decision.

1. MORTGAGES, § 23*—*when deed a mortgage.* By a verbal agreement between a judgment creditor and a debtor, the latter assigned a certificate of sale to the former, the agreement providing that the creditor would hold the certificate as security for the judgment debt and for what he should pay to get the certificate released from a third person holding it, and for what he should pay to redeem the property from a tax sale and for other items. It was held that a deed subsequently issued on the certificate was an equitable mortgage, from which the debtor was entitled to redeem.

2. MORTGAGES, § 725*—*when time limit fixed for redemption not binding.* The provision in a verbal agreement, whereunder a certificate of sale was assigned by a debtor as security for a debt and a deed constituting a mortgage was issued, fixing a time limit for the redemption by the debtor, will not operate to prevent the debtor from redeeming at a subsequent date, especially where the creditor had not, at the time limit fixed, done all of the acts which the agreement required him to do.

3. MORTGAGES, § 14*—*when deed given as mortgage not a payment of debt.* Where a deed is issued under a certificate of sale assigned to secure a judgment debt due from the assignor to the assignee and other amounts to be advanced by the latter, the deed is an equitable mortgage and does not constitute a payment of the debts secured by it.

4. FRAUDS, STATUTE OF, § 48*—*when deed operating as mortgage enforceable.* Where a deed absolute in form is in fact but a mortgage to secure a debt, it will be enforced as such in equity, notwithstanding the Statute of Frauds and the fact that the agreement for redemption is verbal.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.